IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JAMES MOUGEOT,                              )
                                            )
                    Plaintiff,              )        Civil Case No. 06-150-KI
                                            )
        vs.                                 )        OPINION AND ORDER
                                            )
MCLANE FOODSERVICE, INC., a foreign         )
corporation,                                )
                                            )
                    Defendant.              )
_____    )

        Aaron W. Baker
        650 Pioneer Tower
        888 S.W. Fifth Avenue
        Portland, Oregon  97204

                Attorney for Plaintiff

        Karen O'Kasey
        Hoffman, Hart & Wagner, LLP
        Twentieth Floor
        1000 S.W. Broadway
        Portland, Oregon  97205

                Attorney for Defendant

Page 1 - OPINION AND ORDER

KING, Judge:

Plaintiff James Mougeot was terminated when, well after his shift had ended, he returned to his workplace to videotape activities he considered suspect.  Defendant McLane Foodservice, Inc. ("McLane") maintains it fired Mougeot for violating company rules prohibiting on-premises loitering and videotaping.  Mougeot alleges claims under Oregon's Whistleblower Law, ORS 659A.230(1), and for the tort of wrongful discharge.  Before the court is Defendant's Motion for Summary Judgment (#17).  For the reasons below, I grant the motion for summary judgment and dismiss all claims.

## FACTS

Mougeot worked as a warehouseman for McLane since he was hired in 2000.  His work hours were from 7:00 AM to 5:00 PM.  Mougeot was concerned about some of McLane's food handling practices.

McLane's employee handbook states:

> Activity in and around company property outside of scheduled work hours interferes with the company's ability to function effectively.  Therefore, a teammate should be on company property only when company business requires it, generally, no more than 15 minutes before and up to 15 minutes after each shift.

Hampton Aff. at 00235.  Mougeot signed a statement on June 29, 2004 acknowledging that he received the handbook.  At the time of the incident, McLane did not have a written policy prohibiting videotaping on the premises.

On Wednesday, January 12, 2005, Mougeot returned to the warehouse at approximately 10:00 PM, five hours after his shift ended.  When he arrived at the warehouse, Mougeot spoke to the Night Supervisor, Travis Heether, and explained that he wanted to videotape the

Page 2 - OPINION AND ORDER

cooler/freezer area. Heether asked why and Mougeot "told him." Mougeot Decl. at 45. Heether

allowed Mougeot to enter and accompanied him while Mougeot videotaped for five to ten

minutes. Mougeot understood at the time that McLane had a policy in the handbook prohibiting

loitering.

The next morning, Paul Barnum, Operations Manager, sent Clay LeFebvre an email about

the videotaping. Barnum characterized the activity as having a "situation on our hands" and

stated that he did not know what Mougeot's motives were but "they can't be good." Bannon Aff.

Ex. B at 1.

On Friday, January 14, LeFebvre left a message on Mougeot's answering machine that

they needed to talk. Mougeot cannot remember when LeFebvre suspended him. It was either in

the message on the machine or when Mougeot went to speak to LeFebvre that afternoon.

LeFebvre also coached Heether in an email about the appropriate way to have handled the

situation.

At the meeting, LeFebvre asked Mougeot why he made the videotape. Mougeot answered

that he was not comfortable explaining. LeFebvre read a statement to Mougeot but would not

give him a copy unless Mougeot agreed to sign it. In the statement, Mougeot would have

admitted that he knowingly disregarded company policy. Mougeot refused to sign the statement

and refused to give LeFebvre the videotape. The meeting ended with Mougeot remaining on

suspension.

After the suspension, Mougeot used the McLane website to look up Ray Prado, who

worked in the corporate human resources office in California. Mougeot called Prado and told

him that he wanted to send a videotape. Mougeot told Prado about violations of food handling,

how operations differed when they were being audited, and that Mougeot believed that it was a

Page 3 - OPINION AND ORDER

health concern.  Mougeot is not aware of any specific statutes that McLane's food handling practices violated.  Prado told Mougeot that he would investigate the allegations.

The following Tuesday or Wednesday, Mougeot was called to come in and talk again with LeFebvre, who told Mougeot that if he returned the video, he would stay employed.  Mougeot again refused to sign the statement.  LeFebvre terminated Mougeot and gave him his final paycheck.  LeFebvre never found out from Mougeot prior to his termination why Mougeot made the videotape.  At some time before the videotaping incident, Mougeot told LeFebvre that he was concerned about food handling at McLane.  Mougeot had never told anyone in upper level management about his concerns because Mougeot did not think he would be believed.

A few days after Mougeot was terminated, he called Prado again to discuss the contents of the videotape.  They only spoke briefly.  Prado told Mougeot that he was not going to do anything about the termination.  Mougeot never sent the videotape to anyone else.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to point out the absence of any genuine issue of material fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party.  Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

# DISCUSSION

I.    <u>Whistleblower Law</u>

McLane seeks dismissal of Mougeot's claim alleged under Oregon's Whistleblower Law.

McLane contends that Mougeot cannot establish a prima facie case of retaliation for two reasons:

(1) Mougeot did not engage in a protected activity because he did not report criminal activity;

and (2) there is no causation between Mougeot's activity and his suspension and discharge

because Mougeot did not send the videotape to Prado until after his suspension and did  not

speak to Prado about the videotape until after his discharge.  McLane further argues that it had a

legitimate, nondiscriminatory reason for discharging Mougeot–his violation of the loitering

policy by returning to the workplace after hours.

Mougeot argues that he made a good faith report of criminal activity to company

managers that puts him within the protections of the Whistleblower Law.  He claims that the Law

does not require the whistleblower to have the intent to ultimately have a law enforcement agency

investigate or prosecute a potential crime.

The standard for establishing a prima facie case of discrimination under Oregon law is

identical to that used in federal law.  <u>Henderson v. Jantzen, Inc.</u>, 79 Or. App. 654, 657, 719 P.2d

1322 (expressly adopting formulation in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802

(1973) and <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981) as test for

ORS Ch. 659 actions).  Oregon courts rejected the burden-shifting mechanism applicable to

federal claims.  <u>Hardie v. Legacy Health System</u>, 167 Or. App. 425, 434-38, 6 P.3d 531 (2000),

<u>superseded by statute on other grounds as recognized in</u> <u>Lansford v. Georgetown Manor, Inc.</u>,

192 Or. App. 261, 275 n.2, 84 P.3d 1104 (2004).  The Ninth Circuit held, however, that when

analyzing Oregon's disability discrimination statute, it would apply the *McDonnell Douglas*

Page 5 - OPINION AND ORDER

burden-shifting analysis rather than Oregon's rule because the burden-shifting analysis was

federal procedural law.  Snead v. Metropolitan Property Casualty Insurance Co., 237 F.3d 1080,

1090-93 (9th Cir.), cert. denied, 534 U.S. 888 (2001).

To establish a retaliation claim, a plaintiff can establish a prima facie case by establishing

the following factors:  (1) involvement in a protected activity; (2) an adverse employment action;

and (3) a causal link between the activity and the employment action.  If the plaintiff establishes

the prima facie case, the burden shifts as in a disparate treatment case.  Stegall v. Citadel

Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2003) (Title VII).  The causal link can be

inferred from circumstantial evidence, such as the proximity in time between the protected

activity and the retaliatory employment decision.  Id. at 1069 (only nine days lapsed between

complaint and termination).

> At summary judgment, the degree of proof necessary to establish a prima facie
> case is "minimal and does not even need to rise to the level of a preponderance of
> the evidence." Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting
> Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)).

> If established, the prima facie case creates a rebuttable presumption that
> the employer unlawfully discriminated against the plaintiff. Id. The burden of
> production then shifts to the employer to articulate a legitimate, nondiscriminatory
> reason for its action. Id. If the employer meets this burden, the presumption of
> unlawful discrimination "simply drops out of the picture." St. Mary's Honor Ctr.
> v. Hicks, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The
> plaintiff then must produce sufficient evidence to raise a genuine issue of material
> fact as to whether the employer's proffered nondiscriminatory reason is merely a
> pretext for discrimination. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282
> (9th Cir. 2000).

Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1037 (9th Cir. 2005).

Oregon's Whistleblower Law states:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported criminal activity by any person, has in good faith caused a complainant's information or complaint to be filed against any person, has in good faith cooperated with any law enforcement agency conducting a criminal investigation, has in good faith brought a civil proceeding against an employer or has testified in good faith at a civil proceeding or criminal trial.

ORS 659A.230(1).

I will not address McLane's argument that Mougeot did not engage in protected activity because he did not report actual criminal activity. I do note, however, that the statute protects employees who make *good faith* reports of criminal activity. See Love v. Polk County Fire Dist., 209 Or. App. 474, 489-92, 149 P.3d 199 (2006) (distinguishing statutes that protect good faith reports from statutes that protect reports of information the employee *reasonably believes* is evidence of a violation of law).

Mougeot's whistleblower claim fails for lack of causation. There is evidence that Mougeot told Heether why he was videotaping but there is no evidence that Heether was involved in any way in the suspension or termination decision. There is no evidence that LeFebvre knew before terminating Mougeot why he made the videotape. At their first meeting, Mougeot told LeFebvre that he was not comfortable explaining why. Barnum told LeFebvre that they had a situation on their hands and that Mougeot's motives could not be good. Barnum also admitted, however, that he did not know what Mougeot's motives were.

There are two pieces of evidence that support Mougeot's causation argument. The first is that at some time during his employment, Mougeot told LeFebvre that he was concerned about

food handling at McLane.  We have no details about the content of the concern and whether

Mougeot complained that laws or regulations were being violated or voiced much milder

concerns.  The description is so sketchy, it is possible that Mougeot's concern was about

efficiency rather than health or safety.  There is no evidence on when the complaint occurred.  I

note that Mougeot worked for McLane for four or five years.  There is no evidence of any

retaliation against Mougeot occurring near the time of the complaint to LeFebvre.  Moreover,

Mougeot was suspended and then terminated immediately after violating written company policy

prohibiting loitering on the premises and unwritten policy prohibiting videotaping.  He never

worked another shift.  I conclude that evidence of Mougeot's prior complaint to LeFebvre is

insufficient to create a factual issue that his suspension/termination was caused by the complaint.

The second piece of evidence is that after his suspension, Mougeot told Prado about food

handling violations and health concerns.  There is no evidence that Prado was involved with the

termination decision or that he conveyed Mougeot's concerns to LeFebvre.  The only evidence is

that LeFebvre never knew prior to the termination why Mougeot made the videotape.  Moreover,

even though Mougeot "blew the whistle" to Prado between the suspension and the termination,

the termination followed the suspension by only a few days and without any change in the stated

reasons.  Again, I conclude that Mougeot's after-the-fact complaint to Prado does not create a

factual issue that the termination was caused by the complaint.  I am also unpersuaded when

considering both pieces of evidence together.

Mougeot failed to establish a prima facie case, even with its minimal burden of proof.

Consequently, I grant summary judgment and dismiss the whistleblower claim with prejudice.

II.    Wrongful Discharge

McLane contends that Mougeot's wrongful discharge claim is precluded by his statutory claim under the Whistleblower Law.  Alternatively, McLane argues that Mougeot did not fulfill an important public duty.  Finally, McLane raises the same arguments as in the whistleblower claim concerning lack of causation and a legitimate nondiscriminatory reason for the discharge.

Mougeot argues that his report of food handling violations is similar to Oregon cases in which employees reported patient abuse, reported violations of drug inventory and recordkeeping requirements, or refused to cover-up federal aviation safety violations.  He contends there is no need to establish that the conduct violated a specific statute.  Concerning the causation issue, Mougeot argues that the decision to terminate him was made before the January 18 meeting and the meeting was an attempt to cover-up the termination decision based on his complaint to management and attempt to document evidence of wrongdoing.

Absent a contractual, statutory, or constitutional requirement, the general rule is that an employer may discharge an employee at any time and for any reason.  Babick v. Oregon Arena Corp., 333 Or. 401, 407 n.2, 40 P.3d 1059 (2002).  Two exceptions exist.  The first is when an employee is discharged for fulfilling an important public duty.  Nees v. Hocks, 272 Or. 210, 536 P.2d 512 (1975) (employee discharged for serving on jury duty); Delaney v. Taco Time Intl, 297 Or. 10, 681 P.2d 114 (1984) (discharged for refusing to sign a false and arguably tortious statement).  The second is when the plaintiff is discharged for exercising a job-related right that reflects an important public policy.  Brown v. Transcon Lines, 284 Or. 597, 588 P.2d 1087 (1978) (discharged for filing a workers compensation claim but statutory remedy in place at the time was inadequate).  In a wrongful discharge claim, the employee must establish a causal connection between a protected activity and the discharge.  Estes v. Lewis and Clark College, 152

Or. App. 372, 381, 954 P.2d 792, <u>rev. denied</u>, 327 Or. 583 (1998).  The employee's protected

activity must have been a substantial factor in the motivation to discharge the employee.  Put

another way, the employer's wrongful purpose must have been a "factor that made a difference"

in the discharge decision.  <u>Id.</u>

  For the reasons discussed above, Mougeot has not created a factual issue on the causation.

I am not persuaded by Mougeot's argument that the decision to terminate him was made prior to

the January 18 meeting, as shown by presenting him with his final paycheck at the meeting, and

is thus evidence of pretext.  Handing over a final paycheck at a termination meeting is not

unusual, due to state law requiring terminated employees to be paid no later than the end of the

first business day after the termination.  ORS 652.140(1).

  Because the conclusion is so clear that Mougeot lacks evidence supporting causation

between his complaint about food handling and his suspension/termination, I decline to address

the more difficult issues of what constitutes an important public duty or whether the statutory

remedy precludes the common law tort.  I grant summary judgment and dismiss the wrongful

discharge claim with prejudice.

<strong>CONCLUSION</strong>

  Defendant's Motion for Summary Judgment (#17) is granted.  This action is dismissed

with prejudice.

  IT IS SO ORDERED.

  Dated this _____12th_____ day of December, 2007.


        __/s/ Garr M. King_____
        Garr M. King
        United States District Judge